GOSSETT v. VAUGHAN et ux. (No. 1307.)

(Court of Civil Appeals of Texas. Texarkana. April 27, 1914. On Motion of Appellant for Rehearing, May 21, 1914.)

1. SPECIFIC PERFORMANCE ⊙⇒35—CONTRACT OF MARRIED WOMAN.

Where a husband contracted to convey his wife's separate property, specific performance will not be granted on the theory that she ratified the contract, for the court is without power, in the absence of a contract on her part executed with reference to the requirements of law, to divest her of her title.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 102–106; Dec. Dig. ⊙⇒35.]

2. CONTRACTS ⊙⇒346—ISSUES AND PROOF.

Where the petition relied upon one contract, recovery cannot be had on a subsequent contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1714, 1718–1751; Dec. Dig. ⊙⇒346.]

3. PLEADING ⊙⇒162—PETITION—OFFICE OF SUPPLEMENTAL PETITION.

Under District Court Rules 4 and 5 (142 S. W. xvii), providing that the original petition shall state all facts constituting the cause of action, and that the supplemental petitions may contain exceptions, general denials, and allegations of new facts in reply to facts alleged by the answer, the court in determining the cause of action stated need not consider the supplemental petition.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. ⊙⇒162.]

4. BROKERS ⊙⇒75 — COMPENSATION — CONTRACTS.

Where a contract to pay commissions to a real estate broker expressly provided that all commissions should be taken out of the sums collected, there can be no recovery of a large sum for sales made, upon which the purchase price had not yet been paid.

[Ed. Note.—For other cases, see Brokers, Dec. Dig. ⊙⇒75.]

On Motion of Appellant for Rehearing.

5. BROKERS ⊙⇒71 — COMPENSATION — CONTRACT.

Where a landowner and a broker made a supplemental contract to fix their rights, the broker cannot recover on both contracts; for, if he performed the supplemental contract, he could recover only on it, and, if not, only on the original contract.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. ⊙⇒71.]

6. FRAUDULENT CONVEYANCE ⊙⇒241—CREDITORS—LIEN—BROKER'S CONTRACT.

Where defendant, who was the apparent record owner of land, contracted with a broker to sell it on commissions, the broker cannot attack as void a previous unrecorded conveyance to defendant's wife; for, as he had no lien, he does not come within the protection of Rev. St. 1911, art. 6824, declaring unrecorded conveyances to be void as to creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 694, 696–726; Dec. Dig. ⊙⇒241.]

7. VENDOR AND PURCHASER ⊙⇒236—BONA FIDE PURCHASERS—WHO ARE.

Unless one has paid a valuable consideration, he cannot question an unrecorded conveyance, under Rev. St. 1911, art. 6824, as a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 570; Dec. Dig. ⊙⇒236.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Rufus A. Gossett against A. M. Vaughan, in which Catherine Vaughan, defendant's wife, intervened. From a judgment for defendants, plaintiff appeals. Reversed and remanded on motion for rehearing.

By his deed dated July 16, 1912, A. M. Vaughan conveyed the property known as the "Richmond Hill addition to the city of Dallas" to his wife, Catherine Vaughan. September 6, 1912, Vaughan, describing himself as the owner of 87 lots remaining unsold in said addition, and R. A. Gossett, a real estate broker, entered into a contract in writing, by the terms of which Gossett alone, for a period of one year, was to have a right to sell the lots. Each of the lots was to be sold at the price thereof indicated on a map or plat referred to in the contract; the price to be paid "$10 down," it was recited, "and $10 a month until the full purchase price is paid." Gossett was to receive for his services 20 per cent. of the price of each lot he sold, and on this account was to be entitled to "the first $25," it was recited, "on each lot and 50 per cent. of the balance of payments until his commission shall have been paid." November 2, 1912, the contract was so modified as to permit Vaughan himself also to sell lots in the addition, and to provide that when he did so Gossett should receive 10, instead of 20, per cent. of the price at which the lots were sold.

Between the time the contract was entered into and November 12, 1912, Gossett sold a number of the lots—some of them for prices in excess of those indicated on the map referred to. He claimed to be entitled to the sums, aggregating $780, representing these overcharges, and Vaughan by a writing dated said November 12, 1912, and specifying the lots sold at a price in excess of that they were to be sold for, agreed he might have same, and to pay same by deeding to Gossett a lot or lots in the addition, to cover the amount thereof, "after," it is recited in the writing, "the said R. A. Gossett has remitted to A. M. Vaughan fifty dollars in cash on each of the above-mentioned lots, where the overage was charged."

As a result of differences between the parties growing out of the transactions between them, on November 14, 1912, they entered into another agreement as follows:

---

"This memorandum between A. M. Vaughan, hereinafter styled owner, and Rufus A. Gossett, hereinafter styled agent, both of Dallas county, Texas, witnesseth: That for and in consideration of the cancellation of the contracts between these parties dated September 6, November 8 and November 12, 1912, copies of which are attached hereto and made a part hereof, and the further consideration that the herein named agent shall surrender to the owner all contracts and papers pertaining to the property described in the said agreement, and the release of all claims thereon, and the said owner hereby agrees to pay the agent $733.75 in cash, and to execute a deed to said agent to lot No. 20, in block H, and lots Nos. 3 and 4, in block I, to the revised plat of Richmond Hill addition to the city of Dallas, in Dallas county, Texas, to said agent, to execute a deed to W. R. Gossett to lot 21, in block H, and of the same addition. All money, deeds and papers involved in this agreement are to be held in escrow, for fifteen days or less from this date, by a third party to be agreed on between the owner and agent, during which time the abstracts to this property are to be furnished agent by owner, showing good and merchantable title in said owner, free of all incumbrances, and examined by the agent at his expense, while the agent is to notify each party to whom he has heretofore sold property that all future payments arising under their deeds and contracts are to be made to the owner. The contracts of September 6, November 8 and November 12 to remain in full force and effect until this agreement is carried out. During the period of the papers' remaining in escrow the owner is to verify the fact of the sales agreements made by agent and purchasers being bona fide, which the agent hereby agrees to guarantee that the same are made in good faith. The owner hereby agrees to forfeit $50 in the event this contract as written is not carried out."

By a petition filed November 16, 1912, Gossett commenced against Vaughan the suit resulting in the judgment from which this appeal is prosecuted. The allegations of the petition, except formal parts thereof, were as follows:

"That heretofore, to wit, on or about the 6th day of September, A. D. 1912, plaintiff and defendant entered into a certain contract in writing, a copy of which is attached hereto, marked 'Exhibit A,' and made a part hereof, under the terms of which plaintiff as the exclusive agent for defendant was to sell land in Richmond Hill addition to the city of Dallas for a commission of twenty per cent. of the selling price as shown on the plat attached to said contract, said contract to be in existence for one year from its date. That on or about the 14th day of November, 1912, there was due and owing to this plaintiff from defendant the sum of $1,768.25, which this defendant admitted in writing he owed, and agreed to pay. Plaintiff would further show that by virtue of and under the contracts with defendant aforesaid, he had and is entitled to a vested interest in the land described in said contracts, which interest is irrevocable on the part of the defendant. Plaintiff would further show that he has good reason to believe and does believe and does hereby allege that unless defendant is prevented from so doing said defendant will dispose of said land, greatly to the damage of plaintiff, in the sum of $5,000. Plaintiff would further show that defendant has heretofore and is now making threats against plaintiff to the effect that plaintiff shall not continue to advertise and sell said land, which he is employed to do under said contract; and further that defendant has threatened and is now threatening to interfere with the sale of said land by plaintiff and to interfere with the payment of installments past due and to become

due by persons who have already made purchases of said land through plaintiff acting under his said contract, and to plaintiff's damage in the sum of $5,000. Plaintiff by reason of the matters alleged has no adequate remedy at law, and unless the relief prayed for is granted plaintiff will lose the sales of lots already made and will be prevented from making further sales under said contract, greatly to plaintiff's damage in the sum of $5,000. Wherefore, premises considered, plaintiff prays that he do have and recover of defendant the sum of $1,768.25, same being the amount now due him under said contract, and further that his interest in said land as shown by said contract be vested and fixed in accordance therewith, and further, pending this suit, that defendant be enjoined from anyway interfering with plaintiff in carrying out said contract or from interfering with any person or persons who have purchased or may hereafter purchase any of said land from plaintiff under his agency as set forth in said contract, and for such other and further relief, both general and special, which law or equity may afford and to which plaintiff may be entitled by reason of the premises."

On the day the petition was filed, a temporary injunction restraining Vaughan as prayed for was granted by the court, who directed that notice of his action be given to Vaughan, and that Vaughan be required to appear before him on November 23, 1912, and show cause why the injunction should not be continued in force. Before said day, to wit, on November 19, 1912, the parties entered into an agreement as follows:

"This agreement made by and between A. M. Vaughan and R. A. Gossett, witnesseth: That whereas, said A. M. Vaughan has been granted fifteen days from and after Saturday, November 23, 1912, in which to investigate said contracts made by said R. A. Gossett for the sale of certain lots in Richmond Hill, an addition to the city of Dallas. Now, if the facts should develope that any of said contracts will not be carried out by the purchasers of said lots, by reason of any representation made to them by said R. A. Gossett, then in that event the amount of twenty per cent. of the selling price of said lot or lots shall be deducted from the amount of $733.75 due said Gossett by said Vaughan by virtue of one certain contract made by and between them the 14th day of November, 1912. This agreement is to be construed as a part of said contract of November 14, 1912. That said Gossett shall retain the amount paid as forfeit money on such contracts so repudiated, and the same shall be credited to said Gossett as shown by statement on which said contract of November 14, 1912, was based."

Catherine Vaughan having made herself a party to the suit, she and her husband, said A. M. Vaughan, on November 28, 1912, joined each other in an amended answer, in which they alleged that the Richmond Hill addition property at the date of the contract of September 6, 1912, and ever afterwards, was a part of Mrs. Vaughan's separate estate, and in which, at great length, they charged that Gossett had been guilty of fraud and misconduct in various particulars in connection with the service he was to perform in selling the lots. In this answer they prayed that the contracts between Gossett and A. M. Vaughan be canceled, for damages, for the dissolution of the injunction granted to Gossett, and for the perpetua-

tion of an injunction the court had granted to them against Gossett.

In a supplemental petition Gossett denied the truth of the charges of fraud and misconduct on his part, alleged that the services he had performed under the contracts with Vaughan were for the benefit of Mrs. Vaughan's separate estate, that she had received and accepted such benefit, and so had ratified and confirmed the acts of her husband; further alleged that Vaughan had full knowledge of the fraud and misconduct, if any, charged against him at the time they entered into the contracts of November 14th and November 19th, and then prayed judgment against Vaughan for the $733.75 mentioned in the contract of November 14th, and that the title to the lots mentioned in that contract be divested out of Mrs. Vaughan and her husband and vested in him and the W. R. Gossett referred to.

The trial was before the court without a jury. His findings of fact and law were not reduced to writing and filed as they might have been. In support of the charges of fraud and misconduct on Gossett's part, there was testimony which would have supported findings as follows: (1) That Gossett having sold two lots to one W. W. Hogg, after collecting from said Hogg $800, the entire purchase price thereof, by exhibiting to said Hogg a deed falsely purporting to have been made to him by Vaughan, concealed the fact from Vaughan and endeavored by false representations to induce Vaughan to convey the two lots to him (Gossett) for $350, intending, if Vaughan did so, to himself convey the lots to Hogg, and in that way defraud Vaughan of the difference between the $350 he would pay to Vaughan and the $800 Hogg had paid to him. (2) That Gossett sold to J. T. Irwin two lots listed at $185 each for an automobile valued at $750, and, after inducing Vaughan and his wife to execute a deed to Irwin reciting a consideration of $750 in cash paid to them, endeavored to have an employé or associate of his (Gossett's) to swear that he had seen him (Gossett) pay to Vaughan the $750 recited as paid to him in the deed, assuring the party he so attempted to suborn that, in the face of the recital in the deed Vaughan had executed, no jury would believe him if he should swear that the money had not been paid to him. And with reference to this transaction there was testimony to support a further finding that Gossett in violation of his contract had not paid to Vaughan any part of the consideration paid to him by Irwin for the lot, and was claiming that he was liable to Vaughan for only $296 (the list price less 20 per cent. as his commissions) on account of the transaction. (3) That Gossett, in violation of his duty as Vaughan's agent, and acting with one Dubois as his partner, had purchased 15 of the lots on his own account. (4) That Gossett had violated the contract he had entered into with Vaughan by selling a number of lots at prices in excess of the prices at which he had agreed to sell same; by selling some of them for smaller cash payments and smaller monthly payments than authorized by the contract; and by failing to pay over to Vaughan portions of sums paid by purchasers, which it was stipulated he should pay to Vaughan. (5) That because of representations made by Gossett, and for other reasons, Mrs. Pritchard, N. C. Langley, A. F. Fisher, Sylvia Cogburn, Mrs. A. Harrison, Mrs. Simpson, Nelson English, Fred Heitmeyer, Mrs. Kaufman, and perhaps other purchasers of lots, were dissatisfied with their purchases, and that some of them probably would refuse to comply with their contracts of purchase.

The effect of the judgment rendered by the court was to dissolve the injunction granted to Gossett and to deny to him any of the relief he sought, and to deny to Vaughan and his wife a recovery of damages as sought by them, but to perpetuate the injunction the court had granted to them forbidding Gossett from selling any of the lots in the addition and from collecting from purchasers of lots he had sold any of the payments they had contracted to make therefor. This appeal is prosecuted by Gossett.

Cecil L. Simpson and Geo. Sergeant, both of Dallas, for appellant. Walker & Williams and Will Crawford, Jr., all of Dallas, for appellees.

WILLSON, C. J. (after stating the facts as above). Gossett, appellant, insists the testimony demanded that judgment be rendered in his favor for $733.75 and for lot 20, in block H, and lots 3 and 4, in block I, and in favor of W. R. Gossett for lot 21, in block H. This insistence is based on the contract of November 14, 1912.

[1] It is clear that the contention, at least so far as it applies to the lots, should be overruled; for the court was without power, in the absence of a contract on Mrs. Vaughan's part, executed with reference to the requirements of the law, to divest her of the title to the lots and vest same in appellant and W. R. Gossett. Munk v. Weidner, 9 Tex. Civ. App. 491, 29 S. W. 409. In the case cited the court said:

"It would be a novel doctrine which, in the absence of positive fraud, would authorize a court to enforce specific performance of an oral agreement, or a written one not privily acknowledged, of a married woman, to convey her separate property in lands, which she could herself only convey in the manner and form provided by statute."

It was not pretended that Mrs. Vaughan had agreed either verbally or in writing to convey the lots to appellant and W. R. Gossett, but merely that she had ratified a contract to do so made by her husband for her benefit.

[2-4] As to the contention that judgment should have been rendered for appellant against Vaughan for the $733.75 mentioned in the contract of November 14th, it may be that the action of the court should not be sustained on the ground of misconduct on the part of appellant in the particulars set out in the statement above, because it appeared that Vaughan knew of such conduct at the time he entered into that contract. It may be, also, that the action of the court should not be sustained because of the absence of testimony showing that appellant had complied with his undertaking under that contract to place in escrow all deeds, papers, etc., held by him relating to the sale of the lots. We think it unnecessary to determine those questions, because we think it is a sufficient answer to the contention to say that appellant's suit was not on that contract, but on the contract of September 6, 1912, as will be readily seen by referring to the allegations in his original petition set out in the statement. Having declared on the contract of September 6th, appellant was not entitled to recover on proof of a breach of the contract of November 14th. It may be true that the contract of November 14th was sufficiently declared upon in the supplemental petition, but that was not the place to set up the cause of action relied upon, and we do not think the court was bound to look to that petition and treat it as a basis for his judgment. Rules 4 and 5 for the Government of District Courts (142 S. W. xvii); Ins. Co. v. Camp, 64 Tex. 521. That appellant was not entitled to recover on the contract of September 6th, which he declared on, is plain. By the terms of that contract the commissions he might become entitled to were to be paid out of sums collected by him of purchasers of lots, and in no other way.

The judgment is affirmed.

### On Motion of Appellant for Rehearing.

[5] In stating the effect of the judgment, we overlooked a part thereof as follows:

"It is further ordered, adjudged, and decreed by the court. that the written contracts of date September 6, 1912, November 8, 1912, November 12, 1912, November 14, 1912, and November 19, 1912, be and the same are hereby canceled and hereby adjudged and decreed to be null and void and of no further force and effect."

Appellant insists, and we agree, that the judgment is erroneous in so far as it cancels the contracts specified. Appellees in their cross-action alleged facts showing that appellant had repeatedly breached the contract of September 6th, but, as we understand the record, neither alleged nor proved facts entitling them to a decree canceling that contract, and certainly did not by either their pleadings or proof show they were entitled to have the other contracts, or any of them, canceled. For this error the judgment will be reversed, and, as we do not think on the record here we should undertake to reform and then affirm the judgment, the cause will be remanded for a new trial.

[6] As noted in the opinion, appellant in his original petition sought a recovery on the contract of September 6th, and in his supplemental petition on the contract of November 14th. The purpose of the latter contract was to adjust the rights of the parties under the former contract. If appellant was entitled to recover on one of them, he was not entitled to recover on the other. If he had so complied with his undertaking under the contract of November 14th as to be entitled to enforce it, he was not entitled to a recovery, without reference to it, on the contract of September 6th. If he had not so complied with his undertaking under the contract of November 14th, then his cause of action against Vaughan, if any he had, was on the contract of September 6th, and he could not claim anything on account of the contract of November 14th. In that attitude of the case, the rights of the parties being unadjusted, same would have to be determined by reference to the contract of September 6th. It seems to us that the issues between the parties could be more satisfactorily determined on another trial if the parties were required to replead the case, and we suggest to the trial court the propriety of having them do so.

[7] We adhere to the conclusion reached that, if the lots appellant seeks to recover belonged to Mrs. Vaughan's separate estate, he is not entitled to a decree devesting her of the title and vesting same in him and W. R. Gossett. Appellant's contention is that he was entitled to that relief because he was in the attitude of an innocent purchaser, in that, being ignorant of Mrs. Vaughan's claim, he dealt with Vaughan at a time when the deed to Mrs. Vaughan was not of record and the title to the lots appeared on the face of record to be in Vaughan. In support of his contention, appellant cites the statute (article 6824, R. S. 1911) which denounces "all bargains, sales and * * * conveyances whatever, of any land," as "void as to all creditors and subsequent purchasers for valuable consideration without notice, unless they shall be acknowledged or proved and filed with the clerk, to be recorded as required by law." But, clearly, appellant was not within the protection of the statute. It has been construed as applying only to creditors who have acquired a lien against property on account of which it is invoked, and appellant was not such a creditor. As a purchaser he was not within the statute because it did not appear that he parted with anything of value on the faith of Vaughan's being the owner of the lots, and Vaughan's undertaking to convey same to him and W. R. Gossett was to pay a debt appellant and W. R. Gossett claimed he owed them.

The motion will be granted, the judgment will be reversed, and the cause will be remanded for a new trial.