## SCHAFF v. PERDUE.  (No. 2739.)*

(Court of Civil Appeals of Texas. Texarkana. May 21, 1923. Rehearing Denied June 14, 1923.)

**1. Trial ☞191(10)—Instruction held not objectionable as charging on weight of evidence.**

In an action for the death of a railway engineer caused by a boiler explosion on the ground that the railroad had not complied with federal Boiler Inspection Act (U. S. Comp. St. § 8631), an instruction as to negligence as to the boiler *held* not to assume that, if any of the defects mentioned existed, the defendant would be liable without regard to whether the defects resulted from negligence or not.

**2. Master and servant ☞110—Federal statute held not to require locomotive boilers to be absolutely safe.**

Federal Boiler Inspection Act (U. S. Comp. St. § 8631), requiring common carriers to furnish locomotives having boilers in good condition, and able to withstand certain tests, though increasing the common-law liability of railroads to their employees for failing to provide safe boilers, does not require that the boilers be absolutely safe under all conditions common to the service.

**3. Master and servant ☞293(6)—Instruction held not objectionable as imposing duty to furnish absolutely safe locomotive boiler.**

In an action for the death of a locomotive engineer caused by a boiler explosion, based on violation of federal Boiler Inspection Act (U. S. Comp. Stats. § 8631), an instruction authorizing a finding for plaintiff if the boiler had not been cleaned as often as conditions required, or if it was not equipped with a fusible plug, or if the pop-off valve was improperly set, or if one or more of the bolts in the crown sheet were cracked, and if due to any or all of such conditions the boiler or appurtenances thereof were not safe, and such unsafe condition caused the explosion, only required the jury to find that, if, by reason of the named conditions, the boiler was unsafe, they should find for plaintiff, and was not objectionable as imposing the duty to furnish absolutely safe boilers under all conditions.

**4. Appeal and error ☞1064(1)—Instruction on railroad's liability, though more onerous than rules of Interstate Commerce Commission, held harmless.**

In an action for the death of a railway engineer caused by a boiler explosion, on the ground that the railroad had not complied with federal Boiler Inspection Act (U. S. Comp. St. § 8631), an instruction that, if one or more bolts in the crown sheet of said boiler were cracked or broken prior to the explosion, and such condition proximately caused the explosion, the railway was liable, though somewhat more onerous than the regulations of the Interstate Commerce Commission, forbidding a boiler to remain in service when two adjacent bolts are broken, etc., in view of evidence that several bolts were defective, was harmless.

**5. Master and servant ☞110—Omission of fusible plugs in locomotive boiler is at carrier's peril.**

Though Boiler Inspection Act (U. S. Comp. St. § 8631), requiring locomotive boilers to be safe for operation without unnecessary peril to life and limb, as supplemented by regulations adopted by the Interstate Commerce Commission, does not require locomotive boilers to be equipped with fusible plugs, the carrier is not relieved from liability for injury to an employee from an explosion which could have been prevented by the use of such simple device.

**6. Pleading ☞274 — Substantive ground of plaintiff's case must be stated in petition or amendment thereof.**

Under district court rules 4, 5, 13, 15 (142 S. W. xvii, xviii), the substantive grounds of plaintiff's cause of action must be stated in the original petition or some amendment thereof, and should not be stated in a supplemental petition.

**7. Master and servant ☞291(6)—Submission of issue of locomotive fireman's negligence held not warranted by pleading.**

In an action under the federal Boiler Inspection Act (U. S. Comp. St. § 8631) for the death of a locomotive engineer caused by a boiler explosion, an allegation in plaintiff's supplemental petition that, if the explosion was caused by "an insufficient amount of water in said boiler, which is not admitted, but denied, same was due to the negligence of said firemen," intended to answer the charge of contributory negligence, was not a substantial averment of negligence on the part of the fireman in permitting the water to become too low, and, though the evidence showed that the most probable cause of the explosion was low water, it was error to give a charge submitting the issue of negligence on the part of the fireman in failing to keep the boiler supplied with water.

**8. Judgment ☞251(1)—Judgment on facts not pleaded unauthorized.**

Facts proved, but not pleaded, cannot form the basis of a judgment.

Error from District Court, Hunt County; Geo. B. Hall, Judge.

Action by Mrs. Ida Perdue, as administratrix of the estate of J. O. Perdue, deceased, against C. E. Schaff, receiver. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Chas. C. Huff, of Dallas, and McMahon & Dohoney, of Greenville, for plaintiff in error.

Harrell & Starnes, of Greenville, for defendant in error.

HODGES, J. In March, 1921, J. O. Perdue, an engineer in the service of the plaintiff in error, was killed by the explosion of the boiler of the locomotive he was operating. His widow later qualified as administratrix, and brought this suit to recover the damages resulting from his death. The ground of the

recovery is that the plaintiff in error ha'd not complied with the federal statute requiring carriers engaged in interstate commerce to furnish safe b'oilers; that he had not complied with the rules and regulations adopted and approved by the Interstate Commerce Commission in not keeping this boiler in proper condition for use in the service. The particular defects relied on are pointed out in that portion of the court's main charge which will be subsequently quoted. The defendant answered by a general denial, and also pleaded contributory negligence on the part of the deceased in failing to keep the boiler supplied with a sufficient quantity of water. To this plea of contributory negligence the plaintiff replied, alleging that it was the duty of the fireman associated with the deceased in operating the locomotive, to keep the boiler supplied with sufficient water, and that, if the explosion resulted from low water, the failure was that of the fireman, and not of the deceased. The case was submitted under a general charge, and a verdict rendered in favor of the defendant in error for $20,000 as damages.

The suit is based upon what is known as the "Boiler Inspection Act," passed some years ago by Congress. Section 8631, U. S. Compiled Statutes. A part of that act is as follows:

"From and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

Other sections provided for the appointment of inspectors and deputy inspectors and the making of regulations for the proper inspection of all boilers in the service of carriers engaged in interstate commerce. Those rules and regulations were to be approved by the Interstate Commerce Commission.

[1-4] The court gave as a part of his general charge the following:

"Therefore, if you believe from the evidence that the boiler of defendant's locomotive No. 555 had not been cleaned as often as the conditions required, or that said boiler was not equipped with a fusible plug, or that the pop-off valve on said boiler was improperly set, or that one or more of the bolts in the crown sheet of said boiler were cracked or broken prior to the explosion, and if you further believe that, due to any or all of such conditions, if any, said boiler or the appurtenances thereof were not in proper condition and safe to operate in the active service of the defendant in moving traffic without unnecessary peril to life and limb, and that such improper and unsafe condition, if any, proximately caused the explosion of said boiler, by which James O. Perdue was killed, you will find for the plaintiff, and assess her damages under the rule hereinafter given you."

The objection to this paragraph is that it was on the weight of the evidence in assuming that, if any of the defects mentioned existed, the defendant would be liable, without reference to whether those defects resulted from negligence or not. The contention is that it is practically impossible to construct a boiler that is absolutely safe under all circumstances, and that carriers can be held responsible only for negligence in failing to make their boilers safe. It was the evident purpose of Congress in adopting this statute to add something to the common-law liability of carriers for failing to provide their employees with safe boilers and machinery in the performance of their duties. St. L. I. M. & S. Ry. Co. v. Taylor, 210 U. S. 294, 28 Sup. Ct. 616, 52 L. Ed. 1061; Lancaster v. Allen, 110 Tex. 213, 217 S. W. 1032, and cases cited. It may be conceded that Congress did not intend to require the carriers to furnish boilers that were absolutely safe under all the conditions common to the service. The charge complained of, when properly construed, does not impose that absolute duty; it only requires the jury to find that certain named conditions existed, and that, if, by reason of those conditions, the boiler was unsafe, they should find for the plaintiff. One of the regulations adopted and approved by the Interstate Commerce Commission provided:

"No boiler shall be allowed to remain in service when there are two adjacent stay bolts broken or plugged in any part of the firebox or combustion chamber, nor where three or more are broken or plugged in a circle four feet in diameter, nor when five or more are broken or plugged in the entire boiler."

While the charge was in terms somewhat more onerous than this regulation, yet under the evidence that error was harmless. The only testimony bearing upon the issue of defective or broken stay bolts tended to show that several of them were defective. The regulations also required boilers of this type to have the safety valve so adjusted as to open at a steam pressure of a little more than 200 pounds. There was another regulation, which required boilers in use to be washed as often as necessary not less than once every thirty days. It was not improper for the court to tell the jury to find for the plaintiff if the unsafe condition of the boiler resulted from a noncompliance with any one or more of these regulations.

[5] The evidence, however, did not show any regulations requiring boilers to be equipped with fusible plugs. The appellant has

specially objected to that portion of the charge, upon the ground that the law does not require such an equipment. The evidence shows that a fusible plug is a small plug made in part of soft metal, which fuses or melts at a lower temperature than the material of which the boiler is composed. This plug is inserted into the top of the fire box as a protection against the consequences of low water in the boiler and overheated crown sheet. This is a structural device, and for that reason, probably, no regulations providing for its presence in boilers have been adopted.

We do not understand that Congress undertook in this act to provide for the adoption of rules and regulations for guidance in building boilers which would be safe for use in the service. That matter was apparently left to the judgment of the carriers. Great Northern Ry. Co. v. Donaldson, 246 U. S. 121, 38 Sup. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581. The evidence shows that fusible plugs were sometimes put into boilers, but that many roads had discontinued their use. If so simple a device was essential to the safety of a boiler, clearly its omission should be at the peril of the carrier. We therefore conclude that this portion of the charge was not subject to the objection made.

[6-8] In addition to the paragraph previously quoted, the court also submitted the following issue:

"If you believe from the evidence that said boiler and appurtenances were in proper condition and safe for such use in moving traffic, and you further believe that it was the duty of the defendant's fireman to keep said boiler supplied with a sufficient amount of water, and that he failed to do so, and that such failure, if any, was the proximate cause of the explosion of said boiler, then, and in that event, you will find for the plaintiff."

That portion of the charge was objected to on the ground that there was no pleading to authorize the submission of that issue. The charge is defended upon the ground that it was pleaded by the plaintiff in her supplemental petition. In her reply to the defense of contributory negligence the plaintiff pleaded as follows:

"That at the time of said explosion and for a long time prior thereto it was the customary practice among the operatives of the defendant's locomotives for the fireman to govern the fire and to keep the boiler supplied with the proper amount of water, which practice was known and acquiesced in by defendant, and at the time of the explosion of said boiler the fireman thereon was charged under said custom and practice with the duty of keeping a sufficient amount of water in said boiler, and was actually, immediately prior to said explosion, operating the machinery and appliances used in supplying the said boiler with water; and if there was an insufficient amount of water in said boiler, which is not admitted, but denied, same was due to the negligence of said fireman on said locomotive.

"Further replying to said amended answer, plaintiff alleges that, if at the time of the explosion of said boiler there was an insufficient amount of water in the same, which is not admitted, but denied, such fact was unknown to the said James O. Perdue, and could not have been known to him for the following reasons," etc.

It is well settled that under the rules for pleading in district and county courts the substantive grounds of the plaintiff's cause of action must be stated in the original petition, or in some amendment thereof. District court rules 4, 5, 13, and 15 (142 S. W. xvii, xviii); Ins. Co. v. Camp, 64 Tex. 521; Burks v. Burks (Tex. Civ. App.) 141 S. W. 337; Towne's Texas Pleading (2d Ed.) 292; First State Bank of Terrell v. Rice, 251 S. W. 284, recently decided by this court. But, even if we should ignore this technical departure from the rules of pleading, this further question arises; Is there in the supplemental petition any substantial averment of negligence on the part of the fireman in permitting the water to become too low? We think not. In the language used in the supplemental petition there is as much of denial as of affirmation of the fact that the explosion was caused by low water. That supplemental pleading was designed and worded only to meet the charge of contributory negligence on the part of the deceased in permitting the water to get low. The evidence tends strongly to show that the explosion resulted from an insufficient supply of water in the boiler. Some of the experts who examined the broken parts gave it as their opinion that an overheated crown sheet was the real cause, and that this condition resulted from an insufficient supply of water. A fair examination of the testimony tended to show that in the number of possible causes low water was by far the most probable one. Hence, if there was an error committed in submitting that ground of recovery, it was one of which the appellant has a right to complain. It is also well settled that facts proved but not pleaded cannot form the basis of a judgment. G. H. & S. A. R. R. v. Scott, 18 Tex. Civ. App. 321, 44 S. W. 589, and cases there cited. We are therefore of the opinion that this issue should not have been submitted, and because of that error the judgment should be reversed.

There are numerous other assignments of error presented in the appellant's brief. They have all been considered, and are overruled without discussion.

For the reasons stated above, the judgment will be reversed, and the cause remanded.