## BROOKS v. KENNEDY.

### No. 3819.

Court of Civil Appeals of Texas. Texarkana.
May 15, 1930.

Rehearing Denied May 22, 1930.

Lane & Lane and J. H. T. Bibb, all of Marshall, for appellants.

Davidson, Blalock & Blalock, of Marshall, for appellees.

LEVY, J. (after stating the case as above).

in the original petition as dated December 15, 1924, payable on demand to S. B. Brooks, and bearing interest at the rate of 8 per cent. per annum from date. It also provides, according to the pleadings, for attorney's fees in the event it is placed in the hands of an attorney for collection. It is further alleged that after its execution and before maturity the note was, for a valuable consideration, indorsed and transferred to the plaintiff.

W. J. Brooks filed no answer. The appellant, M. M. Brooks, answered by a general demurrer, a general denial, and a plea of non est factum properly verified. In reply to that answer the appellee filed the following supplemental petition.

"That M. M. Brooks executed the original note, dated December 15, 1919, of which the note sued upon is a renewal; said original note being in the principal sum of $3,000.00, payable to Sam B. Brooks, and executed by M. M. Brooks in person, and by W. J. Brooks, his codefendant; that the money paid for said original note by appellee's deceased husband was a part of the original transaction, and, was deposited on behalf of W. J. Brooks for the account of his indebtedness to Donald McGinnis, of New Orleans, Louisiana, on said December 15, 1919. That said money was so deposited in the bank at which said W. J. Brooks and defendant M. M. Brooks were doing business in the town of Greenville, to the credit of W. J. Brooks, with the full knowledge of defendant, M. M. Brooks, and at his instance and request and under an arrangement made by the said defendant, M. M. Brooks, with Sam B. Brooks, an officer of said bank, and in accordance with the instructions and authority given by defendant, M. M. Brooks, to Sam B. Brooks to furnish the said W. J. Brooks with monies in connection with the operation of a cotton exchange and cotton accounts operated by W. J. Brooks. That the interest on said note was paid from time to time and the same was extended and plaintiff avers that said interest was paid by checks drawn by W. J. Brooks on funds and accounts of defendant, M. M. Brooks. That said original note was thereafter, on December 15, 1924, or thereabout. delivered to S. B. Brooks, as officer of said bank, at which defendants were then doing business in Greenville, Texas, with the request by plaintiff, or her son, Dr. C. T. Kennedy, that defendants be required to pay said note or execute a proper renewal thereof. That the note herein sued on was executed and by the said S. B. Brooks delivered to plaintiff as a renewal and extension of the original indebtedness of defendants to the plaintiff, being the same note described in plaintiff's original petition herein. That the defendant, M. M. Brooks, was at all times familiar with the transactions between the said W. J. Brooks and S. B. Brooks as officer of

Hamilton & Hamilton, of Dallas, and O. C. Mulkey, of Commerce, for appellant.

M. M. Chrestman, of Dallas, R. R. Neyland, of Greenville, and Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellee.

HODGES, J.

The appellee, Ann B. Kennedy, filed this suit in the district court of Hunt county against W. J. Brooks and M. M. Brooks on a promissory note for $3,000. The note is described

said bank and knew of the execution of said note herein sued upon, and the interest thereon was paid out of funds belonging to defendant, with his knowledge and consent and without complaint on the part of defendant, M. M. Brooks, and that defendant, M. M. Brooks, at no time repudiated said obligation until some time after said bank went into liquidation or was absorbed by another bank in Greenville. That if the said M. M. Brooks did not actually sign his name to said renewal note, he authorized the said W. J. Brooks to sign the same; and if he did not directly authorize his signature thereto that he knew thereof and had authorized the said S. B. Brooks to accept other obligations so signed by W. J. Brooks for him and knew that the said S. B. Brooks was in good faith so accepting said signature as binding on defendant, M. M. Brooks, at all of said times. That plaintiff and her deceased husband paid over said $3,000.00 for said original note in good faith and relied upon the bona fides of said note and said renewal thereof and relied upon the good faith of the said S. B. Brooks in procuring a renewal of said note with proper signatures thereto. That defendant M. M. Brooks, though knowing of his original signature and renewal thereof, at no time denied his liability or said indebtedness until many years later, to-wit, in the year 1927, after the failure of said bank, and at all times theretofore acquiesced in the dealings between the said W. J. Brooks and S. B. Brooks with full knowledge of the facts and that said original note was unpaid, or of such facts as would have acquainted him with the true facts thereabout had he used reasonable care to discover the same. That thereby the defendant, M. M. Brooks, waived his defense as herein pleaded, acquiesced in the said transactions and ratified the same by his several acts and acquiescences, and is estopped from now pleading lack of authority and repudiation of his said debt as in his pleading so sought to do."

The case was submitted to a jury upon the following special issues:

"Q. 1. On December 15, 1924, when the note sued on was executed, do you find from a preponderance of the evidence in this case that the defendant W. J. Brooks had permission or authority from his father, M. M. Brooks, so sign the name of M. M. Brooks to the note sued on in this case?" To which the jury answered, "No."

"Q. 2. If you have answered 'No' to question No. 1 above, then do you find from a preponderance of the evidence in this case that M. M. Brooks subsequent to the execution of such note in controversy and before the First National Bank of Greenville quit business received information that W. J. Brooks had signed his name to the note in controversy in this cause?" Answer, "Yes."

"Q. 3. If you have answered 'Yes' to question No. 2, then do you find from a preponderance of the evidence in this case that with such knowledge or information, if any, M. M. Brooks acquiesced in or ratified the act of W. J. Brooks in signing his name to the note inquired about?" Answer, "Yes."

Upon those answers the court rendered a judgment in favor of the appellee against both defendants for the full amount of the note, together with interest and attorney's fees. M. M. Brooks alone has appealed.

It is apparent from the record that the judgment against the appellant is based upon the finding of the jury that appellant ratified the unauthorized act of W. J. Brooks in signing his (appellant's) name to the note sued on.

The proof shows that W. J. Brooks is a son of the appellant, and in 1919 was engaged in conducting a cotton brokerage business in the city of Greenville, Tex. He needed $3,000 in cash to pay an indebtedness. On December 15, 1919, he executed a note for that amount, payable to S. B. Brooks, a nephew of the appellant, and who was at the time cashier of the First National Bank of Greenville. Appellant's name was signed to that note, but the evidence is conflicting as to who signed it. S. B. Brooks testified that appellant himself signed it, while the appellant was equally emphatic in denying that he signed the note, or authorized any other person to sign it for him. Immediately after its execution the note was indorsed and transferred by S. B. Brooks to Dr. C. P. Kennedy, the husband of the appellee, who paid over to W. J. Brooks, or to S. B. Brooks for him, the consideration of $3,000. That sum was then deposited in the First National Bank of Greenville to the credit of Donald, McGinnis & Co., of New Orleans, who were creditors of W. J. Brooks. Dr. C. P. Kennedy died in March, 1923, and the title and possession of the note passed to his wife, the appellee in this case. It later came into the possession of her son, Dr. C. T. Kennedy, who took over the management of his father's estate after the death of the latter. The interest on the note was paid annually, presumably by W. J. Brooks. During the latter part of 1924, Dr. C. T. Kennedy, as the representative of his mother, wanted the note paid or renewed, and made a demand to that effect on S. B. Brooks, who was an indorser. On December 15, 1924, W. J. Brooks executed a new note for the same amount, and, like the other, payable to S. B. Brooks. He signed the appellant's name to that new note. Immediately after its execution the note was indorsed by S. B. Brooks and delivered to Dr. Kennedy, who surrendered the old note. This renewal note is the instrument upon which the cause of action stated in the appellee's original petition is based.

It appears from the evidence that the interest was thereafter paid annually as it accrued by W. J. Brooks until about the end of the year 1927. The note is not incorporated in the

statement of facts, and the only evidence of the interest payments is found in the testimony of S. B. Brooks and Dr. Kennedy.

While the record contains a number of assignments of error, we think it necessary to consider only those which challenge the sufficiency of the evidence to support the answers of the jury to the second and third interrogatories—that appellant knew that his name had been signed to the renewal note and thereafter ratified it.

The testimony is conflicting as to whether appellant signed his own name to the original note executed in 1919, or that it was signed thereto by some other person. But since the suit is upon the new note executed in 1924, that question becomes immaterial. It conclusively appears from the evidence that the original debt was incurred solely for the benefit of W. J. Brooks, who was then a mature man engaged in a business enterprise of his own. As between him and his father, the appellant, the latter was only a surety.

The cause of action against the appellant, as set out in appellee's original petition, was disposed of adversely to her by the answer of the jury to the first interrogatory—that the appellant did not sign his name to the renewal note and did not authorize any other person to sign for him. It follows, then, that the only pleadings on which a recovery against appellant can be based are contained in the appellee's supplemental petition filed in reply to the plea of non est factum.

The practice of setting up a distinct cause of action in a supplemental petition is an irregularity which courts are not inclined to encourage. However, it is generally held that, when this is done and no legal objection is made by the opposing party, such a pleading will be treated as sufficient to support a judgment for affirmative relief.

It is doubtful, to say the least, if this supplemental pleading should be construed as more than a mere reply to the appellant's plea of non est factum—the averment of facts which should estop appellant from now repudiating the act of W. J. Brooks in signing his (appellant's) name to the note. But assuming that it does present a distinct cause of action and giving its terms the broadest possible signification, it seeks to hold the appellant liable for the debt on two grounds. One is that he knew that his name had been signed to the note by W. J. Brooks and failed to repudiate that signature till after the failure of the First National Bank of Greenville, which occurred about the last of December, 1927. The other is that, with notice that his name had been signed to the note, he thereafter acquiesced in and ratified the signature.

It is plainly apparent that many of the facts alleged in the supplement, if proved, would only tend to show authority on the part of W. J. Brooks to sign appellant's name to notes. In considering the facts relied on, we come first to the question, Was the appellant estopped to deny his liability on the new note because he did not repudiate the signature before the failure of the bank in 1927? It is well established that estoppels are interposed for the purpose of preventing an injury to the party who invokes the estoppel. In order to estop the appellant from denying his liability on the note, it was necessary to allege and prove that he knew that his name had been signed, that circumstances existed which required him to repudiate the signature if he did not intend to be bound thereby, and that by his failure to so repudiate prior to the failure of the bank the holder of the note sustained an injury. W. J. Brooks signed the note as principal, and S. B. Brooks as indorser. The appellant was not present, and there is no evidence that he then knew of this new transaction. The original note was surrendered upon the execution of the renewal note. That act under the facts of this case terminated appellant's liability if any ever existed. By what act, then, did he afterward become liable on the new note? Clearly, he could not have been held liable if within a few days after the execution of the new note he had given notice to appellee, or her agent, that he would not be bound by the note. Then what injury resulted from his delay in repudiating till after the failure of the bank? The bank had no interest in the transaction; had no connection with it in any form. While S. B. Brooks was one of its officers, he was not acting in that capacity in dealing with this note. It is not alleged by the appellee that either S. B. Brooks or W. J. Brooks was insolvent at the time the note was executed, or that either became insolvent thereafter. While S. B. Brooks testified that after the failure of the bank he became a bankrupt, there is no evidence that W. J. Brooks' was insolvent or was not able to pay the note at the time it was sued on. It is therefore not apparent that any significance should be attached to a delay of repudiation till after the failure of the bank.

Passing, then, to the other question, did the evidence show that the appellant ratified the unauthorized act of W. J. Brooks in signing his (appellant's) name to the new note? If it can be said that ratification is pleaded in the supplemental petition, it must be found in the following:

"That defendant M. M. Brooks, though knowing of his original signature and renewal thereof, at no time denied his liability or said indebtedness until many years later, to-wit, in the year 1927, after the failure of said bank, and at all times theretofore acquiesced in the dealings between the said W. J. Brooks and S. B. Brooks with full knowledge of the facts and that said original note was unpaid, or of such facts as would have acquainted him with the true facts thereabout had he used

reasonable care to discover the same. That thereby the defendant, M. M. Brooks, waived his defense as herein pleaded, acquiesced in the said transactions and ratified the same by his several acts and acquiescences, and is estopped from now pleading lack of authority and repudiation of his said debt as in his pleading so sought to do."

■ Ratification may be either express or implied. In this case there is no evidence that the appellant ever expressly ratified the signature to the new note. It conclusively appears that he was not present at the time the note was executed, and there is no evidence that he knew it was to be executed. The original debt was five years old, and he had a right to conclude that it had been paid, unless the contrary had been brought to his attention. He testified that he knew nothing of either note till the latter part of 1927, and, upon learning that his name had been used, at once repudiated the signature. It appears, that the most potent circumstance relied on to prove an implied ratification is that, with notice that his name had been signed to the note, he delayed repudiation till the latter part of December, 1927. Circumstances are also relied on to contradict appellant's statement that he did not know of the existence of the note till that time. Those circumstances are that the interest on the note was paid annually by checks, to which appellant's name was signed by W. J. Brooks, drawn on appellant's funds in the bank. As evidence of that custom, S. B. Brooks testified:

"The interest was paid on the note up to the time it was renewed. The interest was payable annually, and it was paid annually. The interest was not always paid the same day. Sometimes he (W. J. Brooks) would pay it in money, sometimes by draft on New Orleans. I think the last interest that was paid was by draft on Donald, McGinnis & Company at New Orleans. I am positive about that. I think that draft was on his father's account. He had some cotton at New Orleans, and had $12,000.00 or $15,000.00 margin. I think the draft was made against that account. I don't know that. I think that is what W. J. Brooks told me. I know that Dr. Kennedy came up after the interest several times, and I told W. J. Brooks if he did not pay the interest that Dr. Kennedy was going to ask for the principal. That was with reference to the renewal note, not the original note."

■■ But that testimony as to what funds were used in paying the interest on the note was purely hearsay and entitled to no probative effect. Henry v. Phillips, 105 Tex. 459, 151 S. W. 533. In the absence of evidence to the contrary, it will be presumed that W. J. Brooks, the principal debtor in this transaction, made the interest payments from his own funds. The only direct evidence that appellant knew of the existence of this renewal note is found in the testimony of S. B. Brooks as follows:

"In the list of notes and drafts so signed and similarly signed by W. J. Brooks which were returned to Judge Brooks, appellant, in the early part of January, 1928, the Kennedy note, the Ann B. Kennedy note, was included. I do not know what action was taken by Judge Brooks as to payment of these notes after I submitted this list to him. I do not know anything after the closing of the bank. He knew about them, because I gave him a list of them, and the Mrs. Ann B. Kennedy note and George Symonds note for $1000.00 and the Byrd note and the Mitchell note for about $8000.00 were included in that list, and a number of them; I can't think of all of them. Prior to that date he knew about these obligations and talked to me about them. He was worried about them. The first time he repudiated this note was after the bank closed. The bank closed about the 29th or 30th of December, 1927."

■ It appears further from other portions of the testimony of S. B. Brooks that the appellant repudiated his liability on this note between January 1 and January 10, 1928, a very few days after he received the notice of this note in the statement referred to by the witness. S. B. Brooks testified that prior to sending the bank statement he had discussed these notes with the appellant, but he does not state how long prior to that time that discussion took place. It may have occurred during the month of December, 1927, only a few days before the repudiation. Having the burden of proving knowledge and ratification on the part of the appellant, it devolved upon the appellee to show by sufficient evidence to justify a finding that appellant did have notice of the existence of this note and had done some act that warranted the jury in concluding that he had ratified the unauthorized act of his son.

■ It is true that there is much testimony in the record tending to show that W. J. Brooks had for a number of years been accustomed to signing his father's name to notes and checks, and that his father had not objected to that custom. There was also testimony to show that appellant paid with his own funds many notes and obligations of W. J. Brooks to which his (appellant's) name had been signed by his son. Those transactions were circumstances relevant only for the purpose of showing authority on the part of W. J. Brooks to sign his father's name to this note. But since the jury decided that issue against the appellee, the potency of that evidence need not be here considered. The proof shows that those transactions involved the execution and settlement of notes and obligations due the Greenville bank and other parties. None of them was with the appellee or her husband. There is no evidence that they

knew anything concerning that custom of appellant in thus allowing his son to take that liberty with his name. We conclude, after a careful examination of the record, that the evidence was insufficient to warrant the submission of the second and third interrogatories propounded to the jury.

The remaining assignments of error need not be discussed; but for the reasons stated, the judgment of the trial court will be reversed, and the cause remanded for a new trial.