**TEXAS COTTON CO-OP. ASS'N v. LENNOX et al.**

**No. 3968.**

Court of Civil Appeals of Texas. Texarkana. March 16, 1931.

Rehearing Denied April 9, 1931.

O. K. Bullard, of Dallas, Long & Wortham, of Paris, and Robbins & Bailey, of Clarksville, for appellant.

Lennox & Lennox, of Clarksville, and King, Mahaffey, Wheeler & Bryson, of Texarkana, for appellees.

WILLSON, C. J. (after stating the case as above).

In opinions heretofore handed down by this court, 283 S. W. 619, 16 S.W.(2d) 413, it was directly held that appellees H. H. Lennox and

C. D. Lennox by force of the written contract dated June 30, 1921, referred to in the statement above, became members of the appellant association. In the same opinions, it was held in effect that appellees as such members became bound by the terms of said contract as executed, unless such terms were thereafter effectually modified by the alleged oral agreement, in which event they became bound by the terms as modified. The holdings specified are believed to be so obviously correct as to not need any further discussion than they have already received in the opinions referred to. Contentions of the parties based on the view that appellees never became members of said association and that the oral agreement did not become a part of the written contract are therefore overruled.

A term of the written agreement required appellant to buy and appellees to sell and deliver to appellant "all of the cotton produced or acquired by or for him (them) in Texas during the years 1921, 1922, 1923, 1924 and 1925"; and another term thereof (paragraph 17) required appellees, if they had on hand on July 1, 1921, "any cotton of the 1920 or previous crops free of liens and capable of delivery," to deliver such cotton to appellant as it might direct, to be graded and marketed by it "in pools wholly separate from all other deliveries" appellees were to make.

It will be noted, on referring to the statement above, that appellees' suit, according to the allegations in their second amended petition, was for damages for breach of an alleged oral contract entered into between them and appellant January 7, 1922, whereby appellant undertook to sell for appellees 1,-095 bales (559,402 pounds) of cotton of which "they were (quoting) the owners and lienholders in actual possession," and which "had been grown (quoting further) upon their farms in Red River County, Texas, during the years 1919, 1920 and 1921."

It will be noted, further, that appellant's cross-action against appellees was for damages for breach of the written contract referred to.

As we view the matter, the oral agreement set up by appellees should be treated as a modification of the written agreement and not as a contract independent of it. In that view, the rights and liabilities of the parties were determinable by the stipulations in the written contract as modified (if they were) by the oral agreement.

Waiving a question which arose, it might plausibly have been contended (Mt. Vernon Car Mfg. Co. v. Hirsch Rolling Mill Co., 285 Mo. 669, 227 S. W. 67; Ostrander v. Messmer (Mo. App.) 223 S. W. 438; Ross-Saskatoon Lumber Co. v. Turner, Dennis & Lowry Lumber Co. (Mo. App.) 253 S. W. 119; Koons v. St. Louis Car Co., 203 Mo. 227, 101 S. W. 49; Gifford v. Willman, 187 Mo. App. 29, 173 S. W. 53), as to whether appellees' suit should not have been on the written contract as modified, instead of on the modification, we will look to the record and from it undertake to determine, first, whether it appeared appellees were entitled to recover anything of appellant on account of the 1,095 bales of cotton because of a breach by it of the written contract as modified by the alleged oral agreement.

The provision numbered 17 in the written contract, heretofore referred to, required appellees to deliver to appellant any cotton they had on hand July 1, 1921, of the 1920 or previous crops, "to be graded (quoting) by the association (appellant) and marketed by it in pools wholly separate from all other deliveries here made, but generally in the manner hereinabove set forth." The manner so set forth was as follows:

"5a. The Association shall pool or mingle the cotton of the grower with cotton of a like variety, grade and staple delivered by other growers. The Association shall classify the cotton and its classification shall be conclusive. Each pool shall be for a full season.

"5b. The Association will endeavor to sell the cotton gradually as the spinning industry requires it at the best possible price before another crop is produced, but in case prices are not satisfactory or production is greater than consumption, or there are abnormal trade or financial conditions, the Association will, in its discretion, hold such part of the cotton as may not be sold at a satisfactory price, until there is a fair demand for it.

"6. The Association agrees to resell such cotton, together with cotton of like variety, grade and staple, delivered by other growers under similar contracts, at the best prices obtainable by it under market conditions; and to pay over the net amount received therefrom, (less freight, insurance and interest) as payment in full to the grower and growers named in contracts similar hereto, according to the cotton delivered by each of them, after deducting therefrom, within the discretion of the Association, the costs of maintaining the Association, organization fee and annual membership dues to the Texas Farm Bureau Federation (unless otherwise paid), and costs of handling, grading and marketing such cotton; and of reserves for credits and other general purposes (said reserves not to exceed one per cent of the gross resale price). The annual surplus from such deductions must be prorated among the growers delivering cotton in that year on the basis of deliveries.

"7. The grower agrees that the Association may handle, in its discretion, some of the cotton in one way and some in another; but the net proceeds of all cotton of like quality, grade and staple, less charge, cost and advances, shall be divided ratably among the

growers in proportion to their deliveries to each pool, payments to be made from time to time until all the accounts of each pool are settled.

"8. The Association may sell the said cotton, within or without this State, directly to spinners or exporters, or otherwise, at such times and upon such conditions and terms as it may deem profitable, fair and advantageous to the growers; and it may sell all or any part of the cotton to or through any agency, now established or to be hereafter established, for the co-operative marketing of the cotton of growers in other states throughout the United States, under such conditions as will serve the joint interest of the growers and the public; and any proportionate expense connected therewith shall be deemed marketing costs under Paragraph 6."

The oral contract as alleged, and as proven at the trial, is set out in the quotation in the statement above from appellees' second amended original petition. It will be noted that the terms thereof were not materially different from the terms set out in paragraphs 5a, 5b, 6, 7, and 8 of the written contract, copied above, except that by the terms of the oral contract appellant was not to sell the 1,095 bales of cotton without first consulting appellees as to the price to be paid therefor. It was undisputed in the evidence that appellant did not so consult appellees, but, instead, sold the cotton without first consulting them.

As we view the matter, if appellees were entitled to recover anything of appellant on account of its breach of the contract as modified, it was damages that accrued to them because of appellant's failure to consult them before selling the 1,095 bales of cotton. The trial court concluded, "in keeping with findings of the jury," he said, that the damages to appellees from such failure amounted to $32,623.20, and in the judgment awarded appellees a recovery of that amount against appellant. We think the evidence warranted such finding and award, and overrule appellant's contention to the contrary.

■ The questions which will be considered next relate to the judgment so far as it was in appellees' favor for damages on account of the matters set up in their second amended first supplemental petition.

It will be seen on referring to the statement above that the matters referred to were acts of appellant in procuring the issuance and service on appellees of certain writs of injunction restraining them from selling cotton appellant claimed was within the terms of the written contract. Appellant insists that such damages, if recoverable at all, were not recoverable when not claimed otherwise than in a supplemental petition.

As we view it, the record discloses no reason why Rules 5 and 15 for the government of district and county courts, invoked by appellant, should not be applied to the case. Said Rule 5 is as follows:

"The plaintiff's supplemental petitions may contain exceptions, general denials, and the allegations of new facts not before alleged by him, in reply to those which have been alleged by the defendant."

Rule 15 is as follows:

"When either party may have occasion to plead new facts, additional to those formerly pleaded by him, which constitute an additional cause of action or defense permissible in the suit, he shall present it as an amendment to the original petition, or original answer (unless it is in its nature a response to some pleading of the opposite party), by substitution, with proper number, name and indorsement, in the same manner as other amendments."

The allegations in said second amended first supplemental petition, setting up appellees' claim for damages because of the restraint imposed by the writs of injunction, were not in reply to any allegations in appellant's fifth amended original answer and cross-bill, but were about matters which, giving effect to Rule 15, appellees were not entitled to set up in a supplemental petition, but were required to present by an amendment of their original petition. Crescent Insurance Co. v. Camp, 64 Tex. 521; May v. Anthony (Tex. Civ. App.) 151 S. W. 602; Gossett v. Vaughan (Tex. Civ. App.) 173 S. W. 933; Paving Co. v. McKay (Tex. Civ. App.) 234 S. W. 587; Sparkman v. Bank (Tex. Civ. App.) 246 S. W. 724; Bank v. Rice (Tex. Civ. App.) 251 S. W. 284; Schaff v. Perdue (Tex. Civ. App.) 254 S. W. 151; Kiehn v. Willmann (Tex. Civ. App.) 218 S. W. 15; Mann v. Trinity Farm Co. (Tex. Civ. App.) 270 S. W. 923; Oak Cliff Ice Delivery Co. v. Peterson (Tex. Civ. App.) 300 S. W. 107; Henderson v. Jones (Tex. Civ. App.) 227 S. W. 736; Ry. Co. v. Larkin (Tex. Civ. App.) 34 S.W.(2d) 693; 49 C. J. 571 et seq. As the claim for such damages must have been and was not otherwise set up than in a supplemental petition, as stated, it follows that under the rules and authorities cited, such damages were not recoverable by appellee, and that the judgment was erroneous so far as it awarded a recovery thereof.

■ But we think the damages awarded appellees on account of the writ of injunction granted by the district judge August 31, 1925, would not have been recoverable had they been claimed in appellees' original petition or an amendment thereof duly filed by appellees.

By the terms of the contract appellees undertook to sell and deliver to appellant all of the cotton produced or acquired by or for them in Texas during the years 1921, 1922, 1923, 1924, and 1925, and agreed appellant should be entitled to an injunction to pre-

vent a breach of said undertaking by them. The writ granted August 31, 1925, as stated, did no more than to restrain appellees "from selling, consigning or otherwise disposing of (quoting) all or any part of the cotton produced or acquired" by or for appellees during the year 1925, to any one except appellant. As the cotton the writ was to operate on was not otherwise described than as stated, it is plain, we think, appellees were not restrained from selling or otherwise disposing of any cotton they may have had not "produced or acquired" by them during said year 1925. If they had such cotton and could have disposed of it without violating the command in the writ, but did not, certainly they were not entitled to look to appellant for damages they may have suffered because of their failure to dispose of same. As certainly, we think, if the cotton was cotton they were bound to sell and deliver to appellant, appellees were not entitled to recover damages of appellant for procuring the issuance and service of the writ they in that event had agreed appellant might procure.

Whether appellees, if they had properly pleaded same, would have been entitled to recover damages of appellant because of the injunction granted by the Supreme Court September 16, 1929, is another question. It appeared that injunction restrained appellees "from selling, consigning, mortgaging or otherwise disposing" of 1,664 bales of cotton, then "in storage (appellant alleged in its application for the writ) in a warehouse at Clarksville, Red River County, Texas." It appeared from the evidence heard at the trial that there were 1,559 bales, weighing 818,423 pounds, belonging to appellees, instead of 1,664 bales, in the warehouse.

If the 1,559 bales was cotton produced or acquired by appellees jointly, it was cotton they were bound by their contract to sell and deliver to appellant, and they were not entitled to recover damages because of the injunction granted by the Supreme Court restraining them from otherwise disposing of same.

It appeared that appellees were indebted to a bank in a sum in excess of $188,000, and that the indebtedness was secured by a verbal lien and by warehouse receipts or certificates issued on the cotton and delivered to the bank. It was not claimed that appellees had "produced" the cotton, and, according to the holding of the majority of this court when the cause was last before it, 16 S.W.(2d) 413, appellees, because of said liens, had not "acquired" the cotton within the meaning of the marketing agreement. There was testimony that the 818,423 pounds of cotton was worth 2 cents a pound more on the market September 16, 1929, when the Supreme Court granted the writ of injunction than it was worth October 23, 1929, when the writ was dissolved. Hence, conforming to the ruling referred to,

which the members of this court other than the writer still think is correct, it would be held, if the claim therefor had been pleaded as required by the rules, that appellees were entitled to recover said difference of 2 cents a pound and storage and insurance as damages suffered by them as a result of the restraint imposed upon them by said writ granted by the Supreme Court. Such a recovery, however, must be denied because of the way the claim therefor was pleaded.

■ On the last appeal of the cause, this court, while remanding same for a new trial, held, 16 S.W.(2d) 413, that the judgment was not erroneous so far as it was in appellant's favor for $37,783.15 as liquidated damages, and refused to disturb same in that respect. On the trial from which this appeal is prosecuted, the court below instructed the jury to find for appellant said sum ($37,783.15) as such damages. In so instructing the jury and in awarding appellant a recovery of the $37,783.15 and of $7,500 as attorney's fees and $782.99 on account of other expenses it incurred, provided for in the marketing contract, a total of $46,066.14, we think said court did not err.

Contentions of the parties not in effect disposed of by what has been said are overruled.

As we understand the record, the judgment should have been in appellant's favor against appellees for $13,442.94, the difference between $32,623.20, the amount awarded appellees on account of appellant's breach of the contract as stated, and $46,066.14, the amount awarded appellant as liquidated damages it was entitled to and on account of attorney's fees and other expenses it incurred. The judgment will not be disturbed so far as it denied appellant specific performance of the contract sued upon, but it will be reversed so far as it was in appellees' favor for a sum of money, and judgment will be here rendered in appellant's favor on its cross-action against appellees for said sum of $13,442.94.

LEVY, J. (dissenting).

The plaintiff's supplemental pleadings in this case do not purport to supply omissions or defects in the original petition or to introduce facts, as grounds for additional affirmative recovery, which occurred prior to the filing of the original petition. It set up the issuance of injunctions and their subsequent dissolution, and asked for judgment for resulting damages. Technically and in strict accordance with the prescribed court rules of this state governing pleadings, it is not permissible for a supplemental pleading to be filed and considered which sets up material facts, as grounds for additional recovery or additional cause of action, or as supplying defects which strengthen or reinforce the cause of action, and omitted in the preparation of the original pleading. That end must be attained and accomplished by an amend-

ment of the original petition. The distinction here stated, however, cannot, as I see it, be insisted upon and regarded, where, without abandoning his original cause of action, the plaintiff, by supplemental pleading, seeks to set up matters as distinct grounds for recovery which have occurred since the filing of his original petition. Pleading of such character is not included within the terms and intendment of Rule 15. As regard such new facts, the court, as within its authority and not in violation of the court rules, can properly treat such supplemental petition as pleading of a character sufficient to form the basis and support of a judgment for affirmative relief. The supplemental petition here is not absolutely a void irregularity against the prescribed court rules governing pleading. Brooks v. Kennedy (Tex. Civ. App.) 28 S. W.(2d) 214. Quoting, as applicable here, from Barnes v. Patrick, 105 Tex. 146; 146 S. W. 154, 155: "No technical rules of pleading can be allowed to defeat a right substantially alleged."

The terms of the two injunctions were broad enough to support a claim for damages as set up in the supplemental pleadings, and therefore the evidence in the case would have to be looked to to determine extent of damages.