## GREAT NORTHERN RAILWAY COMPANY *v.* DON-ALDSON, ADMINISTRATRIX OF THOMS.

### ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 172. Argued January 31, 1918.—Decided March 4, 1918.

Where the state trial and supreme courts have successively found sufficient evidence of negligence to sustain a verdict for plaintiff in an action under the Employers' Liability Act, it is not the province of this court to weigh the conflicting evidence on the subject; it will go no farther than to ascertain that there is evidence supporting the verdict.

The Federal Boiler Inspection Act, c. 103, 36 Stat. 913, is a "statute enacted for the safety of employees," within the meaning of § 4 of the Federal Employers' Liability Act, which latter eliminates assumption of risk in cases where the violation of such a statute contributes to the injury or death of the employee.

Where there was evidence tending to prove that a locomotive boiler. which exploded was unsafe in that the button-heads on the bolts of the crown-sheet over the fire-box were unnecessarily large, and subject to deterioration from overheating, when oil was used for fuel; and in that the boiler was not provided with fusible safety plugs and had an accumulation of scale; *held,* that a request for an instruction stating that no safety statute was applicable, and submitting the question of assumed risk, was inconsistent with § 4 of the Employers' Liability Act and § 2 of the Boiler Inspection Act.

The court instructed to the effect that if the jury believed from a fair preponderance of the evidence that the boiler was not in the proper condition, etc., defined by § 2 of the Boiler Inspection Act, due to the defendant's negligence in any of the respects above mentioned, there would be no assumption of risk, but that if it was in such condition, but due to defendant's negligence was defective in any of such respects, and the employee had actual knowledge of such defects or they were so plainly visible that in the reasonable exercise of his faculties he should, and might be presumed to, have known them, then he assumed the risk. *Held,* more favorable to the defendant than the law required.

Testimony *held* not to show an approval by federal boiler inspectors of the use of the large type of button-head on an oil-burning engine.

When a feature of construction renders a boiler unsafe, within the definition of § 2 of the Boiler Inspection Act, the fact that it has not been disapproved by a federal inspector does not absolve the carrier from liability.

89 Washington, 161, affirmed.

THE case is stated in the opinion.

*Mr. F. G. Dorety,* with whom *Mr. E. C. Lindley* and *Mr. F. V. Brown* were on the briefs, for plaintiff in error.

*Mr. James McCabe,* with whom *Mr. Hyman Zettler* and *Mr. John C. Higgins* were on the brief, for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

Adaline Donaldson as administratrix of the estate of Vance H. Thoms, deceased, brought suit in the Superior Court of Snohomish County, Washington, under the Federal Employers' Liability Act, to recover damages for injuries received which resulted in the death of Vance H. Thoms, by reason of a boiler explosion upon one of defendant's engines upon which decedent was employed as an engineer.

The charges of negligence, in the amended complaint alleged to have resulted in the injury and death of the decedent, were: That the boiler on the engine was insufficient in that:

1. The button-heads of the crown-bolts of the boiler were excessively and unnecessarily large and consequently unduly exposed to the direct heat produced by the oil fuel used on the locomotive;

2. That the boiler was not provided with fusible safety plugs;

3. That scale was negligently allowed by defendant company, its officers and employees, to accumulate upon the crown-sheet in the boiler.

The answer of the company denied negligence, and specifically set up the defense of contributory negligence and assumed risk on the part of the deceased.   In the trial court the plaintiff recovered a verdict and judgment, and the judgment was affirmed in the Supreme Court of the State of Washington.   89 Washington, 161.

The ground of reversal principally urged here is that the testimony did not warrant a recovery by the plaintiff, and when properly considered required an instruction to the jury to find a verdict in favor of the company.

An examination of the record discloses that there was testimony tending to support the allegations of negligence set forth in the amended complaint.   That the engine upon which the deceased was working had been a coal-burning engine but that at the time of the explosion the fuel used in its operation was, and for some time had been, oil.   That the button-heads on the bolts of the crown-sheet at the top of the fire-box (this sheet also formed the bottom of . the water compartment over the fire-box). were large ones when the engine was fired with coal, and were not changed with the change of fuel from coal to oil. That these button-heads because of their size became overheated when oil was used for fuel, resulting in the deterioration and weakening of the strength of their material, and from the consequent giving away of the button-heads, the crown-sheet came down and the explosion resulted.   There is also testimony tending to show that there was an accumulation of scale and a want of use of. fusible plugs.

On the part of the company there was testimony tending to meet and refute that introduced by the plaintiff, and a considerable amount of testimony was introduced tending to show that the water in the boiler was too low,

thereby causing the explosion from the fault of the deceased engineer in allowing it to become so. There was testimony for the plaintiff to the effect that the water was not too low at the time of the explosion. The trial court submitted these issues to the jury, with the result that a verdict was found in favor of the plaintiff. The trial court held that there was evidence sufficient to sustain the verdict, and refused to disturb it. The Supreme Court of Washington affirmed the judgment. In this situation it is enough to say that it is not the province of this court to weigh conflicting evidence. The record shows testimony supporting the verdict, and that is as far as this court enters upon a consideration of that question.

Complaint is made that the trial court failed to give an instruction requested by the company as to assumption of risk, and as to the effect of the Federal Boiler Inspection Act.

Section 4 of the Federal Employers' Liability Act (35 Stat. 65) provides:

"That in any action brought against any common carrier under or by virtue of any of the provisions of this Act to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

That the Federal Boiler Inspection Act was enacted for the safety of employees is obvious. Section 2 of that act, 36 Stat. 913; 8 U. S. Comp. Stats. 1916, § 8631, provides:

"That from and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this Act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said loco-

motive and appurtenances thereto are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this Act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

Counsel for the company at the trial upon assumed risk requested the following charge:

"You are instructed that even where an employer, such as a railroad company, is negligent in the construction or maintenance of its tools or equipment, such as a locomotive, yet an employee who accepts, or continues his employment, knowing of the existence of such defects or negligence, and knowing the danger therefrom, assumes the risk of the injury to himself from such defects and cannot recover if he is injured as a result of them. This would not be true in the present case, if the negligence or defects involved some violation of a United States statute, but there is no evidence of any violation of such a statute in this action, so that the rule which I have just given to you would apply in this case. Therefore, even if you find that the defendant company had been negligent in adopting an improper type of bolt, or in failing to install fusible plugs, or in some other particular in the construction or maintenance of this boiler, and even though you should also find that such negligence caused the explosion, still, the plaintiff cannot recover in this action, if you should also find that the deceased, V. H. Thoms, was familiar with the type of construction used, or the particular form of negligence involved, and knew the danger likely to arise therefrom, or if, in the exercise of a reasonable care, he should have known of these things prior to the time of his injury."

But the court charged upon this subject:

"You are instructed that the law provides that it shall be unlawful for any common carrier, as was the defendant, engaged in interstate commerce, to use any locomotive engine propelled by steam power, unless the boiler of the locomotive engine and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of said carrier in moving traffic, without unnecessary peril to life and limb; and that no employee shall be deemed to have assumed any risk of death by reason of any locomotive engine operated in violation of said law, and that no employee injured or killed by reason of a locomotive engine operated in violation of said law shall be held to have been guilty of contributory negligence.

"Therefore, if you shall believe, from a fair preponderance of all the evidence in the case, that the boiler of the locomotive engine No. 1902 or the appurtenances thereof were not in proper condition and safe to operate in the active service of the defendant in moving traffic without unnecessary peril to life or limb, by reason of the negligence of the defendant, in any one or more of the three respects alleged in the complaint, then and in that case Vance H. Thoms assumed no risk of death and was guilty of no contributory negligence, and the affirmative defenses must fail.

"However, if such boiler and appurtenances were in proper condition and safe for such use in moving traffic, but due to defendant's negligence were defective in one or more of the respects alleged in the complaint and Vance H. Thoms had actual knowledge of such defect or defects, or such defects were so plainly observable that in the reasonable exercise of his faculties he should have known of such and may be presumed to have known thereof and the dangers that surrounded him, then Vance

H. Thoms assumed the risks of injury and the plaintiff cannot recover in this action."

The charge requested is inconsistent with the provisions of § 4 of the Federal Employers' Liability Act and § 2 of the Boiler Inspection Act.   As given it is enough to say that it is more favorable to the company than the law requires.   See *Chesapeake & Ohio Ry. Co.* v. *Proffitt,* 241 U. S. 462, 468.

The further contention is that the effect of this charge was to leave to the jury to determine the type of boiler construction, in respect to the use of the large button-heads which are alleged to have made the engine unsafe to operate.   And it is contended that there is testimony tending to show that the use of either the large or small kind of button-heads was approved by the Federal Department of Boiler Inspection.   Attention is directed to the testimony of an expert witness, offered by the defendant for the purpose of showing that low water was the cause of the explosion, in which he spoke of the use of the button-heads of the larger and also of the smaller or taperhead kind, and was asked whether the United States Government made certain requirements as to how boilers and engines should be constructed, to which he answered: "No.   Not as long we have the proper factor of safety."   .   .   .   "They have a factor of safety, and the factor of safety is five on the shell of the boilers; that is if we have a 200 pound pressure boiler it should stand up to a test of 1000 pounds; five to one."   Asked whether the Government inspects engines and locomotives in general, he answered: "Yes, by the United States inspectors," and that there was a standard to which locomotives must be built in order to pass inspection.   Asked as to the type of the crown-bolt permitted, he answered that either type is acceptable when properly applied.   It is evident that this testimony, whatever might be its effect, is far from showing an approval by government inspect-

ors of the use of the large type of button-head upon an oil-burning engine.

Nor can we agree with the contention of the plaintiff in error that so long as the large button-head had not been disapproved by the government inspector such fact is conclusive of the sufficiency of the type in use. We find nothing in the Boiler Inspection Act to warrant the conclusion that there is no liability for an unsafe locomotive, in view of the provisions of § 2 of the act, because some particular feature of construction, which has been found unsafe, has not been disapproved by the federal boiler inspector.

Other errors are assigned; so far as they are open here we have examined these assignments and find in none of them reason for the reversal of the judgment of the Supreme Court of Washington, and that judgment is

*Affirmed.*