### 10567

### PATTERSON v. DIRECTOR GENERAL OF RAILROADS.

#### (105 S. E. 746.)

1. MASTER AND SERVANT—EXCESSIVE SPEED OF TRAIN HELD NOT PROXIMATE CAUSE OF SERVANT'S INJURY.—Where a yard conductor attempting to operate an engine with a leaky throttle stopped on a sidetrack, and by reason of the defect the engine moved into a passing train, the excessive speed of the train was not the proximate cause of his injury.

2. COMMERCE—YARD CONDUCTOR HELD NOT WITHIN FEDERAL ACT.—That a yard conductor had been operating an engine switching cars loaded with interstate freight and empties destined to points beyond the State, which movements had been completed before his injury in a collision, and his next movement would have been moving an empty for express people, was not enough to bring him within the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665), even if such empty was to carry interstate freight.

3. MASTER AND SERVANT—ASSUMPTION OF RISK BY YARD CONDUCTOR OPERATING DEFECTIVE ENGINE HELD QUESTION FOR COURT.—In an action by a yard conductor injured while operating an engine with a leaky throttle, causing the engine to move after he stopped it in a sidetrack to let a train pass, evidence *held* insufficient to present a question for the jury as to whether he knew of the defect and appreciated the danger.

4. MASTER AND SERVANT—RAILROADS—YARD CONDUCTOR'S VIOLATION OF RULE HELD AVAILABLE DEFENSE.—A yard conductor, though injured as a result of the railroad's violation of the Federal Boiler Inspection Act (U. S. Comp. St., secs. 8630-8639). as amended by Act March 4 1915 (U. S. Comp. St., secs. 8639a-8639d), in furnishing a defective engine which he attempted to operate in wilful violation of a rule forbidding his operation of engines, is not entitled to recover; his conduct in violating the rule being available as defense, whether it be called negligence or assumption of risk, referred to in Employers' Liability Act, secs. 3, 4 (U. S. Comp. St., secs. 8659, 8660).

Before MOORE, J., Richland, Fall term, 1919. Affirmed.

Action by W. A. Patterson against Director General of Railroads. From order of nonsuit, the plaintiff appeals.

*Messrs. E. J. Best* and *E. W. Mullins,* for appellant, cite:

*Application of doctrine of assumption of risk under Federal Employers' Liability Act:* 223 U. S. 492; 232 U. S. 102; 236 Fed. 1. *Same rule as in* 102 S. C. 409, 107 S. C. 96: *When a question for the jury:* 241 U. S. 310; 130 U. S. 649; 128 U. S. 91; 210 Fed. 118; 66 S. C. 217; 58 S. E. 255. *Proximate cause should have been submitted to jury:* 109 S. C. 122; 94 U. S. 469; 213 U. S. 7; 111 U. S. 228; 68 S. C. 55; 15 C. C. A. 57. *Intervening cause of injury:* 111 Mass. 574; 213 U. S. 7. *Violation of ordinance is evidence of wilfulness:* 108 S. C. 380. *And where there is evidence of wilfulness defendant cannot invoke rule as to negligence being the direct cause of injury:* 94 U. S. 469. *Case not removable if it is alleged that it is brought under Federal Employers' Liability Act:* 110 S. C. 522; 246 U. S. 276.

*Mr. Frank G. Tompkins,* for respondent, cites: *Case must stand or fall under law laid down by Federal Courts:* 241 U. S. 460; 241 U. S. 469; 179 U. S. 658; 241 U. S. 229. *Nonsuit proper:* 110 S. C. 153. *Cases at 107 S. C. 97 and 102 S. C. 402 not under Liability Act and do not apply here. Speed of passenger train with which plaintiff's engine collided was not proximate cause of injury:* 94 U. S. 469; 240 U. S. 444; 229 U. S. 265; 143 Ill. 242; 18 L. R. A. 215. *Case having been brought under the Federal act plaintiff would either have to prove his case as brought, or amend, as otherwise defendant would be deprived of right of removal:* 229 U.S. 156, 161; 235 U. S. 308; 236 U. S. 454; 244 U. S. 200; 168 S. W. 250; Michie on Fed. Emp. Act, secs. 129, 130. *Injury result of plaintiff's negligent violation of rules:* 96 S. C. 228. *No negligence by company shown:* Wharton's Neg., sec 75; 241 U. S. 333.

January 31, 1921.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff appeals from a judgment of nonsuit. He sued under the Federal Employers' Liability Act (U. S. Comp. St., secs. 8657-8665) to recover damages for personal injuries received by him on November 22, 1918, while employed in the service of defendant as a yard conductor at Spartanburg, S. C. He alleged that at the time of his injury he was engaged in interstate commerce, and that the injury was caused by the negligence of defendant in furnishing him a defective engine and in running an interstate passenger train in the yard at a dangerous rate of speed, in violation of one of defendant's rules and an ordinance of the city, both of which forbade the running of trains in the yard at a speed of more than 10 miles an hour.

Defendant's answer admitted plaintiff's employment as a yard conductor and his injury, but denied that he was engaged in interstate commerce, when injured, and denied the allegations of negligence and consquent liability, and set up the defense of assumption of risk and contributory negligence, alleging that plaintiff knew the defective condition of the engine and the dangers incident to its operation, and assumed the risk of injury thereby; also that plaintiff's own negligence or contributory negligence caused the injury, because, although plaintiff was not an engineer and did not understand the mechanism and operation of an engine, and was forbidden by defendant's rules to run or attempt to run an engine, nevertheless, without authority of defendant and in violation of the rules, he attempted to operate the engine, and thereby caused the collision which resulted in his injury.

The engine had a leaky throttle, so that steam would escape from the boiler into the cylinders, when the throttle was closed, and cause the engine to move—forward or backward, as the lever was left in forward or backward gear—after it had stood long enough for sufficient steam to escape into the cylinders. But such movement was preventable either by leaving the lever "on center" or by setting the brakes. The engine had been in this condition for some months, and plaintiff had seen it move on that account several times—once a few months and again a few weeks before he was hurt.

The accident happened in this way: Plaintiff had been operating the engine in shifting cars about the yard, and had stopped on a sidetrack to let a through passenger train, known as No. 48, go by on the main line. He stopped the engine, left the lever in forward gear, and was about to get off, when his switchman called to him: "Look out; 48 is coming; you are not clear." Plaintiff saw at a glance

that the engine was slowly moving forward toward the main line. He caught the lever and tried to reverse it, but could not move the lever. The engineers testified that when steam has escaped into the cylinders through a leaky throttle, it is very difficult to pull the reverse lever back, when it is in forward gear. Plaintiff said that, when he found it hard to move, he put his foot against the boiler and made a lunge at it, and, just as he did so, there was a blow (from the collision with No. 48), and he was knocked down and unconscious for a few minutes. The engineer, who was sitting there all the while, jumped off just before the collision, and the engine, having been reversed, ran wild for about two miles across the city to East Spartanburg, where plaintiff was taken off, his right leg having been caught under the apron and crushed so that it had to be cut off. Plaintiff testified that No. 48 came into the yard at a speed of 30 or 35 miles an hour, in violation of the rule and city ordinance referred to in his complaint. But he said the engine and tender or No. 48 had passed the junction of the sidetrack with the main line, so that his engine collided with the first or second car in that train.

Plaintiff was an experienced railroad man, having been in the service about 23 years, and having been a yard conductor several years, though the exact length of that service is not stated. He testified that he was not an engineer, and it would have taken him 3 years to learn to be one, and that he knew nothing about an engine, except how to run one when it was working all right; that, under the rules, it was the sole duty of the engineer to run the engine, and no one else was authorized to run it; that he was running it by permission of the engineer, who was sitting in the cab with him; that the engineer would have run it, if he had requested him to do so; that he had frequently run the engine, while oprat-

ing in the yards, but knew of only one other conductor who had ever attempted to run an engine, and that was only for a short distance, and he could not say whether any official of the road knew of his or the other conductor's violation of the rules. Two of plaintiff's witnesses, who were engineers, testified that, under the rules, a conductor has no business running an engine, and that they would not allow one to run their engines, though they had known of yard conductors making short movements of the engine, under the supervision of the engineer.

On defendant's motion, the trial Court granted a nonsuit on four grounds: (1) That the evidence is susceptible of but one reasonable inference, viz., that plaintiff knew of the defective condition of the engine and the danger incident to his operating it, and assumed the risk of injury in so doing; (2) that he was guilty of such negligence in operating it under the circumstances, and in violation of the defendant's rules as to bar his recovery; (3) that the evidence fails to show that he was engaged in interstate commerce at the time of his injury; and (4) that there was no evidence tending to show that defendant was guilty of any negligence which had a casual connection with plaintiff's injury.

While the nonsuit was granted on all the grounds stated, the decision was rested chiefly upon the first ground. At least that was the ground chiefly discussed by the Court in its remarks upon the motion. Plaintiff's exceptions question the correctness of the decision upon all the grounds.

In sustaining the fourth ground, the Court evidently considered it as referring only to the negligence charged in running No. 48 in the yard at an excessive rate of speed, because the Court said that the only reasonable conclusion from the evidence was that the injury was caused by the defective condition of the engine being operated

at the time by plaintiff, and as to the other charge of negligence (running No. 48 in excess of 10 miles an hour) that the only reasonable conclusion was that it was a remote, and not a proximate, cause of the injury. We say this to remove what may seem to be an inconsistency in the holding that the engine was defective, and that its defective condition was a proximate cause of the injury, and in sustaining the fourth ground of nonsuit, that there was no evidence of any negligence having a causal connection with the injury. For, inferentially at least, the Court held that negligence might be inferred from the defective condition of the throttle, but that the risk of injury therefrom had been voluntarily assumed. Limiting the fourth ground, as suggested, to the speed of No. 48, we concur in the view that it was not the proximate cause of the injury, because that train did not run into plaintiff's engine, but his engine ran into the train, after its engine and tender had passed the junction of the switch with the main line. The speed and position of No. 48 was, therefore, only a remote cause of the injury.

We concur also in the conclusion that the proof failed to bring the case under the Federal Employers' Liability Act. Plaintiff testified that prior to his injury he had been switching cars loaded with interstate freight and empty cars destined to points beyond the State. But these movements had all been completed, and he had stopped his engine in the sidetrack to let No. 48 pass. He said that, if he had not been hurt, his next movement would have been to place an empty for the express people; but that was not enough to bring the case within the act, even if it had appeared that the empty was to be loaded with interstate freight, but there was no such evidence. *Erie R. Co. v. Welsh,* 242 U. S. 303, 37 Sup. Ct. 116, 61 L. Ed. 319.

The case was argued on Circuit and in this Court upon

the concession by plaintiff's attorneys that the defense of assumption of risk was available to defendant.    They say in their brief: "This case was brought under the Federal Employers' Liability Act, and it is conceded by appellant that the defense of assumption of risk is available to the defendant."    But they contend that the evidence made an issue of fact which should have been submitted to the jury as to whether the plaintiff both knew of the defect and danger, and particularly as to whether he fully appreciated the danger.    After careful consideration of the evidence and its tendencies in the light most favorable to plaintiff, we concur in the conclusion of the trial Court.    In view of plaintiff's long experience in the railroad business, in which he had risen to the position of a yard conductor, and in view of his experience in that position, we do not see how any reasonable mind could come to any other conclusion than that he both knew the defective condition of the engine and appreciated the danger incident to his operation of it.    Both would have been obvious to any person of ordinary prudence and intelligence of much less experience.

But, after the hearing in this Court, appellant's attorneys called our attention to the Federal Boiler Inspection Act (U. S. Comp., sections 8630-8639), as amended by the act of March 4, 1915 (U. S. Comp. St., sections 8639a-8639d), neither of which was brought to the attention of the trial Court, and suggested that, inasmuch as that was one of the Safety Appliance Acts referred to in sections 3 and 4 of the Employers' Liability Act (sections 8659, 8660), the violation of it by defendant, in using a defective engine, had the effect of defeating the defenses of contributory negligence and assumption of risk, under the authority of *Great Northern R. Co. v. Donaldson,* 246 U. S. 121, 38 Sup. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918e, 581. The answer to that contention is that the proof failed to

bring this action under the Employers' Liability Act, and, therefore, the alleged violation of the Boiler Inspection Act cannot have the effect claimed for it.

But we do not rest our decision upon such a narrow or technical ground, because we think that, even if plaintiff had proved that he was engaged in interstate commerce at the time of his injury, or that, although he was engaged only in intrastate commerce, but injured while so engaged as a result of the violation by defendant of the Safety Appliance Acts (as in Rigsby's case, 241 U. S. 33, 36 Sup. Ct. 482, 60 L. Ed. 874), still, under the undisputed evidence in this case, the defense sought to be excluded would have been available to defendant, because the only reasonable inference from the evidence is that plaintiff wilfully violated the rule which forbade his attempting to run the engine, without the knowledge or acquiescence of defendant and without any reason or excuse for his doing so; and he thereby voluntarily suspended the relation of master and servant between defendant and himself. We do not mean that he consciously or deliberately intended that his conduct should have that effect, for it may be that the legal consequences of his act were neither actually contemplated nor anticipated by him, but, for cogent reasons, the law gives it that effect.

The law requires the master to select competent servants to perform the duties assigned them, having in view their skill and experience therein, and to make reasonable rules for their safety, and it imposes upon the servants the duty of obeying such rules. Hence when a servant wilfully disobeys a rule made for his own safety and that of others who may be affected, without a reasonable excuse, he departs so far from the line of his duty as to suspend the relation of master and servant; and, if he is injured solely by his disobedience of the rule, his master is not liable. To such a

case the maxim, *"volenti non fit injuria,"* applies.    It is not meant that every violation of a rule will have that effect. Whether it will or not in a given case must depend upon the quality of the rule and the circumstances of its violation, as to which we need not go into details.    *Spokane etc. R. Co. v. Campbell,* 241 U. S., 497; 36 Sup. Ct. 683; 60 L. Ed., 1125.

The operation of a locomotive engine, though in perfect condition, requires a certain skill and experience as well as the constant and vigilant attention of the engineer.    Notwithstanding the defect in the throttle, the engine may have been safe to operate when operated by a competent engineer. It had been operated for several months in that condition without harmful results.    However that may be, plaintiff had no business to attempt to run it, even if it had been in perfect condition.    The purpose, importance, and good sense of the rule forbidding him to do so were as obvious as was his duty to obey it.    There was no reason or excuse whatever for his violating it; and however much we may sympathize with him in his misfortune, we are constrained to hold that his conduct, whether it be called negligence or assumption of risk, absolves the defendant from liability for his injury.    *Great Northern R. Co. v. Wiles,* 240 U. S. 444, 36 Sup. Ct. 406, 60 L. Ed. 732.

Judgment affirmed.

Mr. Justice Gage did not participate.