## LEHIGH VALLEY R. CO. v. BELTZ.

(Circuit Court of Appeals, Second Circuit. November 2, 1925.)

### No. 45.

**1. Appeal and error ⟵⟶1151(2)—Amount of verdict may not be modified.**

Amount of damages recoverable for death of employee in interstate commerce is question for jury, and court of error cannot modify judgment on verdict at common law, on ground that verdict is excessive.

**2. Master and servant ⟵⟶110—"Locomotive" and "car" are not same, for purposes of Safety Appliance Acts.**

A "locomotive" and a "car" are not the same for all purposes of Safety Appliance Acts (Comp. St. § 8605 et seq.).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Car; Locomotive.]

**3. Master and servant ⟵⟶204(2), 228(2)—Contributory negligence and assumption of risk not defense in case of violation of Boiler Inspection Act.**

If a violation of Boiler Inspection Act, § 2 (Comp. St. § 8631), contributed to cause death of employee engaged in interstate commerce, questions of contributory negligence and assumption of risk do not arise.

**4. Master and servant ⟵⟶110—Boiler Inspection Act imposes "absolute duty" to use safe locomotives.**

Boiler Inspection Act Feb. 17, 1911, § 2, as amended by Act March 4, 1915 (Comp. St. §§

8639a–8639d), imposes on carrier in interstate commerce an absolute duty to keep its locomotives free from defects and absolutely safe to operate; "absolute duty" meaning one not subject to any limitation or condition, positive and not dependent, and unqualified by any considerations whatsoever.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Absolute Duty.]

**5. Master and servant ⊂⊃129(5)—Causal connection between violation of Boiler Inspection Act and injury essential to liability.**

It is essential to liability of carrier under Boiler Inspection Act Feb. 17, 1911, as amended by Act March 4, 1915 (Comp. St. §§ 8639a–8639d), for injury or death of employee, that noncompliance with act was proximate cause of accident.

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Annie Beltz, as administratrix of the goods, chattels, and credits of Milton D. Beltz, deceased, against the Lehigh Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Alexander & Green, of New York City (Clifton P. Williamson, and H. S. Ogden, both of New York City, of counsel), for plaintiff in error.

Humphrey J. Lynch, of New York City (Sol Gelb, of White Plains, N. Y., of counsel), for defendant in error.

Before ROGERS, HOUGH and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This action was brought by plaintiff, as the administratrix of the estate of her deceased husband, to recover damages for his death. The defendant railroad company is a Pennsylvania corporation, which maintains its office and principal place of business in the Southern district of New York. The plaintiff's decedent was employed by the defendant as a conductor on one of its trains. At the time of his death, which occurred on November 15, 1920, he was in the employ of defendant and in charge of a freight train, which it is admitted was engaged in interstate commerce. While in the discharge of his duties he was riding in the cab of one of defendant's engines, when the main pin broke, causing the driving and parallel rods to fly about, disabling the engine and punching a hole in the boiler, causing a violent emission of steam, hot water, and coals of fire into the cab. Those on the engine jumped in an effort to save their lives. In so doing the

plaintiff's intestate received fatal bodily injuries, from which he died. Two others also met their death.

The complaint stated that the action was brought under the federal Employers' Liability Act of April 22, 1908, c. 149, 35 Stat. p. 65, as amended by the Act of April 5, 1910, c. 143, 36 Stat. p. 291 (Comp. St. §§ 8657–8665), and also under the Safety Appliance Act of March 2, 1893, c. 196, 27 Stat. p. 531, and the amendatory Acts of March 2, 1903, c. 976, 32 Stat. p. 943, and April 14, 1910, c. 160, 36 Stat. p. 298 (Comp. St. §§ 8605 et seq.). The complaint made no reference to the federal Boiler Inspection Act of February 17, 1911, c. 103, § 2, 36 Stat. p. 913 (Comp. St. § 8631), amended by Act March 4, 1915, c. 169, 38 Stat. p. 1192 (Comp. St. §§ 8639a–8639d).

The Boiler Inspection Act of 1911, in interstate or foreign traffic, made it unlawful to use any locomotive engine propelled by steam power "unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service. * * *" Comp. St. § 8631. And the act of 1915 extended the application of the act of 1911. Section 2 of the act of 1911 provides:

"That from and after the first day of July, nineteen hundred and eleven, it shall be unlawful for any common carrier, its officers or agents, subject to this act to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of said locomotive and appurtenances thereof are in proper condition and safe to operate in the service to which the same is put, that the same may be employed in the active service of such carrier in moving traffic without unnecessary peril to life or limb, and all boilers shall be inspected from time to time in accordance with the provisions of this act, and be able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

The amendatory act of 1915 declared that the act of 1911 should "apply to and include the entire locomotive and tender and all their parts * * * and * * * appurtenances. Comp. St. § 8639b.

In the instant case the trial judge was of the opinion that the act made it the absolute duty to use only locomotives which are in all respects safe. If an unsafe locomotive should be used and injury resulted, the loss had to fall somewhere and Congress made it

fall on the carrier, whether the latter was at fault or not. The acts, in his opinion, made the carrier "an insurer against all defects of its rolling stock." He refused to charge that "the mere breaking of this pin (in the locomotive) does not establish a violation of defendant's duties, under the so-called Boiler Inspection Act, as amended, or establish a cause of action in favor of plaintiff." He therefore instructed the jury that the only question of fact for them to consider was the question as to the amount of the damages.

[1] The jury returned a verdict against the defendant in the sum of $25,000—$15,000 for the widow of Beltz and $10,000 for his son. The amount of the damages which the administratrix was entitled to recover was for the jury to determine. A court of error cannot modify a judgment upon a verdict at common law on the ground that the verdict is excessive. Foster's Federal Practice, vol. 4, § 711, d. p. 3886. But in this case no claim is made that the amount of the verdict is excessive.

[2] At the time of Beltz's death he was 43 years of age, his wife was 36, and this boy, the only child, was 2 years old. It was stipulated that, subsequent to November 15, 1920, the date of Beltz's death, the rate of pay for freight conductors of the class to which the decedent belonged was reduced from the regular rate of $6.96 a day to $6.32 a day; that that rate remained in force until April 1, 1924, when the rate was increased to $6.68 a day. But with the amount of this verdict we are not concerned.

The safety appliance legislation of 1893 and the acts amendatory thereof did not, in express terms, apply to locomotives, except that it was declared unlawful to use any locomotive engine, in moving interstate traffic, not equipped with a power driving wheel brake and appliances for operating the train brake system. With that exception, the remainder of the acts had to do with the equipment of the "cars." It was held that a locomotive engine is a "car," within the meaning of the second section of the act of 1893. Johnson v. Southern Pacific Company, 196 U. S. 1, 25 S. Ct. 158, 49 L. Ed. 363; Southern Railway Co. v. Crockett, 234 U. S. 725, 34 S. Ct. 897, 58 L. Ed. 1564; United States v. Philadelphia & Reading Ry. Co. (D. C.) 223 F. 213. But clearly a "locomotive" and a "car" are not the same for all the purposes of the Safety Appliance Acts. Davis, as Director General of Railroads, v. Manry, 266 U. S. 401, 45 S. Ct. 163, 69 L. Ed. 350.

[3] There is no question here concerning contributory negligence or assumption of risk. The question of contributory negligence and that of assumption of risk do not arise, if a violation of section 2 of the Boiler Inspection Act contributed to cause the death of an employee. Baltimore & Ohio R. R. Co. v. Groeger, 266 U. S. 521, 523, 45 S. Ct. 169, 69 L. Ed. 419; Great Northern Ry. Co. v. Donaldson, 246 U. S. 121, 124, 38 S. Ct. 230, 62 L. Ed. 616, Ann. Cas. 1918C, 581.

[4] There are numerous assignments of error, but they all depend upon the single question whether the Boiler Inspection Act imposed upon the defendant an absolute duty to keep its locomotive engines free from defects and absolutely safe to operate, so that the defendant became liable to its employees, injured by the failure to discharge that duty, although the defect or defects were not due to the defendant's negligence. In St. Louis Iron Mountain & Southern Ry. Co. v. Taylor, 210 U. S. 281, 295, 28 S. Ct. 616, 621 (52 L. Ed. 1061), the Supreme Court, commenting on the Safety Appliance Acts, declared:

"In the case before us the liability of the defendant does not grow out of the common-law duty of master to servant. The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Congress was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the law-making body. * * * It is quite conceivable that Congress, contemplating the inevitable hard-

ship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words. We see no error in this part of the case."

In Chicago, Burlington & Quincy Railway Co. v. United States, 220 U. S. 559, 31 S. Ct. 612, 55 L. Ed. 582, the Supreme Court had the meaning of the Safety Appliance Acts again before it. It quoted at length from the Taylor Case, supra. Mr. Justice Harlan, writing for the court, called attention to the fact that in that case the court had decided that the acts "imposed an absolute duty" on the carriers, and that that duty could not be evaded or excused by proof that the carrier had used ordinary care or reasonable diligence. He declared that the court was unwilling to regard the question "as open to further discussion here. If the court was wrong in the Taylor Case, the way is open for such an amendment of the statute as Congress may, in its discretion, deem proper." As the court has ever since adhered to its construction of the acts, and Congress has never seen fit to modify the construction the court gave them, we must conclude that no error was committed· and that Congress intended the duty imposed to be absolute.

In Texas & Pacific Ry. Co. v. Rigsby, 241 U. S. 33, 43, 36 S. Ct. 482, 60 L. Ed. 874, the court, referring to the Safety Appliance Act, again declared: "The question whether the defective condition of the ladder was due to defendant's negligence is immaterial, since the statute imposes an absolute and unqualified duty to maintain the appliance in secure condition."

In the recent case of Baltimore & Ohio Railroad Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419, the Supreme Court had occasion to pass upon section 2 of the Boiler Inspection Act. That was an action brought by an administratrix of the estate of her deceased husband to recover damages for his death. At the time of his death he was a locomotive engineer, operating a steam locomotive propelling an interstate train. He, too, was killed by the explosion of the boiler. In that case, as in this, the administratrix obtained a verdict and judgment against the defendant, and it was affirmed by the Circuit Court of Appeals for the Sixth Circuit, 288 F. 321. The case was taken on certiorari to the Supreme Court, and reversed for certain erroneous instructions to the jury to which it is not necessary for us to refer at this time. But it is important and material that the Supreme Court, construing section 2 of the Boiler Inspection Act, declared: "By the last-mentioned section defendant was bound absolutely to furnish what before, under the common law, it was its duty to exercise ordinary care to provide." And the court went on to speak of the defendant's "duty to have and keep its boilers safe for use as required by the act." It declared: "No notice to the defendant, actual or constructive, of the defects or unsafe condition of the boiler, was necessary to plaintiff's case."

An "absolute" duty is one which is not subject to any limitation or condition. It is positive and not dependent. It is unqualified by any conditions or considerations whatsoever. If the Boiler Inspection Act imposed on the defendant an absolute duty to have the boiler and appurtenances thereof safe to operate, and substituted that rule for the common-law rule, which holds the employer to ordinary care to provide his employees a reasonably safe place in which, and reasonably safe appliances and machinery with which to work, it in effect makes the employer an insurer of the safety of the place in which the employee works and of the appliances with which he works. While the duty imposed upon the carrier is absolute, it is not enough that the carrier had failed to show that the appliances which it had provided were safe.

[5] It must appear in addition that the failure of the carrier to comply with the act was the proximate cause of the accident which resulted in the injury. Davis v. Wolfe, 263 U. S. 239, 243, 44 S. Ct. 64, 68 L. Ed. 284. The liability arises only when the failure to obey the acts is the proximate cause of the injury. Louisville Railroad v. Layton, 243 U. S. 617, 621, 37 S. Ct. 456, 61 L. Ed. 931; Lang v. New York Central Railroad Co., 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729. In the instant case it is perfectly evident that the failure of defendant to furnish a safe locomotive was the proximate cause of the death of Beltz.

The construction here given to the Boiler Inspection Act accords with that placed by the Supreme Court upon the Safety Appliance Act. The construction to be given to

that act came before the Circuit Court of Appeals for the Sixth Circuit in 1908 in St. Louis & San Francisco Railroad Co. v. Delk, 158 F. 931, 86 C. C. A. 95, 14 Ann. Cas. 233. That court held that, while the Safety Appliance Act imposed on the carrier the absolute duty in the first instance of equipping its cars with couplers of the character described in the act, and thereafter to keep them so equipped, the carrier was only required to use reasonable care after the cars had been so equipped to keep the automatic couplers in repair. In the course of his opinion, which was concurred in by Judge Lurton (afterwards an Associate Justice of the Supreme Court), Judge Severens said:

"But it is now proposed to add to the obligation of the carrier by requiring that he shall be bound to see that the substituted coupling shall at all times and places be in good order, a burden well nigh to impossible. The coupling apparatus on railroad cars is subject at all times while they are being operated, to almost constant wrench and strain and liability to breakage. Much of the time the cars are connected up in trains running on time schedules, and under orders of train dispatchers which must be observed, or fatal and disastrous consequences ensue. Moreover, accidents to the couplings or unknown defects appear at places more or less remote from repair shops. It is reasonable and just to require that the carrier should exercise a high degree of care to keep the couplings in proper condition. But it seems unjust and unreasonable to say that having fulfilled its utmost duty in this regard, it should be held responsible for conditions which may occur without its fault. We do not say that Congress has not the power to impose such an obligation as it is contended this statute imposes; but what we mean to say is that if a statute seems to impose obligations so extraordinary and difficult to perform the courts would be bound to see whether the language employed is not susceptible of a more reasonable construction."

The case went on certiorari to the Supreme Court, where it was reversed. 220 U. S. 580, 31 S. Ct. 617, 55 L. Ed. 590. In reversing it the court said:

"The construction of the statute, adopted by a majority of the Circuit Court of Appeals to the effect that the act did not impose upon the carrier an absolute duty to provide and keep proper couplers at all times and under all circumstances, but was bound only to the extent of its best endeavor to meet the requirements of the statute, has

been rejected by this court in Chicago, Burlington & Quincy Railway Co. v. United States [220 U. S. just decided, 559, 31 S. Ct. 612, 55 L. Ed. 582], and on the authority of that case we hold that the Circuit Court of Appeals erred in the particular mentioned."

As this court is satisfied that the duty imposed, under section 2 of the Boiler Inspection Act, on a carrier in interstate commerce is absolute, and it is admitted that the plaintiff's decedent, at the time his injuries were inflicted, was engaged in such commerce, and there is no doubt that the failure of the carrier to furnish a safe locomotive as required by the act was the proximate cause of his injuries, I agree that the judgment should be affirmed.

HOUGH, Circuit Judge, dissents, deeming the ruling made inconsistent with Baltimore & Ohio R. R. Co. v. Groeger, 266 U. S. 521, 45 S. Ct. 169, 69 L. Ed. 419.